UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTWANE WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-03927-TWP-TAB |
| ) | |
| STORMS, Lieutenant, MELODY CONSTANT, ) | |
| TURLEY, Officer, WEXFORD OF INDIANA, ) | |
| LLC, and HALL, Officer, ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING IN PART AND DENYING IN PART MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Wexford of Indiana, LLC ("Wexford") and Melody Constant ("Nurse Constant") (collectively, the "Medical Defendants") (Dkt. 80). In 2018, *pro se* Plaintiff Antwane Washington's ("Mr. Washington") hands were injured in his cell door at New Castle Correctional Facility ("New Castle"). This lawsuit is based on Mr. Washington's claims that five defendants involved in that incident—three correctional officers, Nurse Constant, and her employer, Wexford—violated his Eighth Amendment rights. The three correctional defendants declined to move for summary judgment, and the claims against them will be resolved by settlement or trial. For the reasons discussed below, the Motion is **denied** as to Nurse Constant but **granted** as to Wexford.

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. Federal Rule of Civil Procedure 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R.

Civ. P. 56(c)(1)(A).  A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty*

*v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II. **FACTS**[1]

On August 23, 2018, Mr. Washington was confined in the Restrictive Housing Unit ("RHU") at New Castle. (Dkt. 92-1 at 2, ¶ 2.) In the RHU, officers distributed meals to inmates in their cells by sliding their trays through hinged tray slots or "cuff ports." *See id.* Because RHU inmates were confined to their cells, inmates handed their trash back through their cuff ports to officers after each meal. *Id.*; Dkt. 80-1 at 41:7–42:5.

Officer Turley collected trash after breakfast on August 23. (Dkt. 92-1 at 2, ¶ 2.) When Mr. Washington extended his trash through the cuff port, Officer Turley slammed the door shut on his hands. *Id.* Officer Turley leaned on the cuff port door for at least two minutes as Mr. Washington screamed in pain. *Id.* at 2, ¶ 3. He relented only after another officer ordered him to stop. *Id.* at 4. Mr. Washington's hands were cut, gashed, and bruised, and they began to swell. (Dkt. 92-1 at 2–3, ¶ 5.) A picture taken afterward shows what appear to be deep cuts on the backs of Mr. Washington's hands and blood on the cuff port door:



*Id.* at 25.

---

[1] Mr. Washington states in his affidavit, (Dkt. 92-1 at 6–7, ¶¶ 21–24), that the Defendants were "evasive" in their discovery responses. However, he did not raise concerns regarding the Medical Defendants' discovery responses in an appropriate motion while discovery was open. Accordingly, the Court proceeds to consider the Medical Defendants' summary judgment motion based on the evidence currently in the record.

After approximately two hours, officers escorted Mr. Washington to the nurse's station to be examined by Nurse Constant. (Dkt. 92-1 at 3–4, ¶¶ 9–10.) When Mr. Washington stated that Officer Turley caused the damage to his hands, she did not believe him, and she accused him of harming himself. *Id.* at 4. She did not, however, contact mental health staff. (Dkt. 80-2 at 4.) Nurse Constant looked at Mr. Washington's hands, but she did not touch them to feel for broken bones or other injuries. (Dkt. 92-1 at 3–4, ¶ 10.) She also did not document her examination in Mr. Washington's medical records. (*See* Dkt. 80-3.)

Mr. Washington informed Nurse Constant that he was "in severe pain," and he requested pain medicine and an ice pack. (Dkt. 80-1 at 55:19–56:5; Dkt. 92-1 at 3–4, ¶ 10.) Although Nurse Constant had authority to provide over-the-counter pain medication, (Dkt. 80-2 at 8), she deemed the cuts "minor" and refused to provide ice or pain medication or to refer Mr. Washington for further examination or treatment by a doctor. (Dkt. 80-2 at 2–3, 7; Dkt. 92-1 at 3–4, ¶ 10.)

On September 10, 2018, Nurse Clayborn examined Mr. Washington at a sick call visit. (Dkt. 80-3 at 1–3.) Mr. Washington reported pain in his left hand and arm. *Id.* at 1–2. Two days later, he returned and added that he was experiencing numbness in his left hand. *Id.* at 4–6. At the second visit, Nurse Clayton advised Mr. Washington to use hot and cold compresses on his hand. *Id.* She did not provide medication or refer Mr. Washington for further treatment. It is not clear what, if any, medical attention Mr. Washington's left hand has received since September 2018.

Mr. Washington was shot in the left hand in 2013—approximately five years before Officer Turley shut his hands in the cuff port. (Dkt. 80-1 at 27:13–17.) The gunshot wound damaged tendons in his hand, and bullet fragments remain in his arm. *Id.* at 29:1–5. Even after two surgeries, he continued to experience numbness, pain, nerve damage, and limited movement in his

left hand. *Id.* at 32:19–33:3. Mr. Washington believes that Officer Turley damaged the surgical repairs to his left hand and arm. (Dkt. 92-1 at ¶ 14.) However, he has not presented any medical evidence supporting that belief or suggesting that his condition would be different now if Nurse Constant had taken a different course in 2018. He continues to experience pain, numbness, and compromised motor skills in his left hand. (Dkt. 80-1 at 68:21–69:1.)

### III. ANALYSIS

Mr. Washington's claims against the Medical Defendants proceed under the Eighth Amendment. The record would allow a reasonable jury to find that Nurse Constant was deliberately indifferent to Mr. Washington's need for medical care, so claims against her will be resolved by settlement or trial. Conversely, Wexford is entitled to summary judgment because no evidence indicates that Mr. Washington's rights were violated because of a Wexford policy or practice.

**A.    Nurse Constant**

"Prison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "As its name implies, deliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'" *Goodloe v. Sood*, 947 F.3d 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). "[T]he evidence must show that the prison official … knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

"Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). More to the point, "an inmate is not entitled to demand specific care and is not entitled to the best care possible …." *Arnett*, 658 F.3d 742, 754 (7th Cir. 2011).

"By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). Deliberate indifference therefore "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources*, 982 F.3d 451, 458 (7th Cir. 2021) (internal quotations omitted). One "type of evidence that can support an inference of deliberate indifference is an inexplicable delay in treatment which serves no penological interest." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).

Mr. Washington's claim against Nurse Constant is limited to the question of whether she was deliberately indifferent to his pain on August 23, 2018. The record indicates that Mr. Washington continues to experience pain, numbness, and compromised motor skills in his left hand, perhaps because of the injuries he sustained when Officer Turley smashed his hand in the cuff port. But the record does not indicate that Nurse Constant was involved in treating Mr. Washington's hand after August 23, 2018, and she can only be liable for her contributions to his condition. *See Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011) (there is a "well-established principle of law that a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed."). No evidence suggests that Mr. Washington's condition would now be better if Nurse Constant had referred him

6

to a doctor, provided pain medication, or had done anything differently on August 23, 2018. As such, the Court considers only whether her acts or omissions on that date amount to deliberate indifference.

As a starting point, a jury could reasonably find that Mr. Washington had a serious medical need.  Mr. Washington had large cuts on his hands, told her that his hands were smashed in the cuff port door for two minutes, and he was in severe pain.  He asked for pain medicine and an ice pack.  A lay person presented with this information would know that Mr. Washington needed at least some basic medical attention. *See Perry*, 990 F.3d at 511.  And whether Mr. Washington's pain was serious enough to constitute a serious medical need is a fact question to be resolved by a jury; this Court cannot simply disbelieve his account at summary judgment and dismiss the claim. *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) ("The fact that Nurse Dunbar and Dr. Benjamin may have based their refusal to treat Walker's pain on a good-faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic painkiller, is an issue for the jury."); *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996) ("The issue here . . . is whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating. That was an issue for the jury.").

Yet, according to the record, Nurse Constant took only a cursory look at Mr. Washington's hands, and she did not even document her assessment in his medical records.  The record also suggests that Nurse Constant was more concerned with determining whether Mr. Washington's injuries were self-inflicted than with treating them—a determination seemingly irrelevant to how his cuts and pain should have been treated.

Based on these facts, a jury could reasonably find that Mr. Washington had a serious medical need, that Nurse Constant's response to that need was not based on professional judgment,

7

and that she caused an inexplicable delay in treating Mr. Washington's pain. *See Zaya*, 836 F.3d at 805; *Petties*, 836 F.3d at 730. Material facts are in dispute, and the claims against Nurse Constant must be resolved by settlement or trial.[2]

## B.    Wexford

Although a private entity, Wexford acts under color of state law and therefore may be liable for violating Mr. Washington's Eighth Amendment rights only under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019). "Prevailing on such a claim requires evidence that a Wexford policy, practice, or custom caused" the constitutional violation discussed above. *Id*. "It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). Mr. Washington has not presented evidence to support a finding that his rights were violated because of a Wexford policy or practice. Mr. Washington asserts that Wexford failed to follow Indiana Department of Correction healthcare directives. (*See* Dkt. 80 at 63:22–65:5.) However, Mr. Washington provides no information about what those directives entail, and he has not presented any evidence supporting an inference that implementing those directives would have improved the care he received for his hand injury. Mr. Washington also

---

[2] Nurse Constant states that Mr. Washington was able to purchase pain medication from the commissary. (*See* Dkt. 80-2 at 8, Interrogatory 25.) The Seventh Circuit has made clear that "the imposition of a modest fee for medical services, standing alone, does not violate the Constitution." *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). This Court has applied *Poole* to hold that prison officials do not violate the Eighth Amendment when they refuse to provide medication that the prisoner can purchase on his own. *See Taylor v. Corizon Med. Servs.*, no. 1:11-cv-1436-JMS-DKL, 2013 WL 4678670, at *6 (S.D. Ind. Aug. 30, 2013). Nevertheless, it is not clear from Nurse Constant's broad statement that she has personal knowledge that Mr. Washington had access to the commissary from the RHU on the date of the incident *and* the means to afford pain medication. Moreover, the Medical Defendants have not raised the availability of pain medicine through the commissary as a basis for summary judgment, and "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal quotations omitted); *see also United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make Connor's case for him.").

asserts that Wexford has a policy or widespread practice of denying inmates adequate medical care for injuries caused by correctional officers, including by falsifying their medical records. (*See* Dkt. 80-1 at 65:6–15, 127:4–12.) However, he offers no evidence to support that assertion except his own experience in this case. *See id.* at 65:16–67:4, 127:8–129:3. "To prove an official policy, custom, or practice within the meaning of *Monell*," a plaintiff "must show more than the deficiencies specific to his own experience, of course." *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016).

At summary judgment, a party must present evidence that could convince a jury to accept his version of the incident. *Gekas*, 814 F.3d at 896. Mr. Washington has not met that burden.

## IV.   CONCLUSION

The Medical Defendants' Motion for Summary Judgment, Dkt. [80], is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** as to Wexford but **DENIED** as to Nurse Constant. Claims against Wexford are **DISMISSED with prejudice** and the **Clerk is directed** to **terminate** Wexford from the docket. No partial final judgment will issue at this time.

The claims against Nurse Constant and the remaining Defendants will be resolved by settlement or trial. In its Entry dated June 23, 2021, the court instructed Mr. Washington that it would attempt to recruit counsel once the medical defendants' summary judgment Motion was resolved (Dkt. 97). Accordingly, the Court will pursue recruitment of counsel. The Court requests that Magistrate Judge Baker set a telephonic status conference once recruited counsel has appeared.

**SO ORDERED.**

Date:  11/12/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

9

DISTRIBUTION:

Antwane Washington, #179879
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
Westville, Indiana  46391

Adam Garth Forrest
BBFCS ATTORNEYS
aforrest@bbfcslaw.com

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com